(25 Misc. Rep. 732.)

### LEIBEL et al. v. LIGHT.

(Supreme Court, Appellate Term. January 23, 1899.)

SALES—RIGHTS OF SELLER.

　　Where the goods sold are to be delivered in installments, each of which is to be paid for before delivery, the seller may refuse to make further delivery until goods already delivered are paid for.

Appeal from municipal court, borough of Manhattan, Seventh district.

Action by Jacob Leibel and another against Benjamin Light. There was a judgment for plaintiffs, and defendant appeals. Reversed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

J. L. Weinberg, for appellant.

Meyer & Josephson, for respondents.

GILDERSLEEVE, J. On or about December 30, 1897, plaintiffs and defendant entered into the following contract, viz.:

"Received from Leibel Bros. the sum of $120.00, as deposit and security for the prompt payment to us of $120.00 monthly for clippings to be delivered by us to said Leibel Bros. weekly; commencing January 3rd, 1898, and ending December 31st, 1898. Above sum to be paid to us in two installments of $60.00 each, semimonthly, the 1st and 15th of every month.

"Leibel Bros.
"B. Light & Co."

Plaintiff swears that the contract was partly oral, and that defendant promised to increase his cutters from 8 or 9 to 16 or 18, in order to have more clippings. These clippings were produced in the manufacture of clothing by the defendant. The case, however, was tried on the theory, as stated by the court to the jury, that "the plaintiffs claim that the defendant broke the contract, in failing to deliver to them clippings after the month of April, 1898, pursuant to the contract." The pleadings are oral. The complaint is for "money had and received," while the answer is a "general denial, breach of contract, and counterclaim." The action is brought to recover back the $120 which plaintiffs deposited with defendant in accordance with the contract. The uncontradicted evidence of the defendant and his witnesses is that on or about April 4th plaintiffs came to defend-

55 N.Y.S.—45

ant's place for the clippings, as usual, and took away the clippings without paying the defendant therefor, and that defendant, when they came again, on April 15th, for the clippings, refused to let them have any until they paid for what they had taken. From January 3d up to April 4th, plaintiffs had always paid their $60 every two weeks, upon receiving the clippings. The plaintiffs' own evidence rather indicates that they themselves refused to take any more clippings, because they were losing money on the contract, and that defendant said he would get more cutters, but did not do so. Defendant denied that he made any such agreement. As we have said, however, there is no denial of defendant's evidence with regard to the events of April 4th and April 15th, above set forth. The justice submitted the case to the jury as follows, viz.:

"The plaintiffs claim that the defendant broke the contract, in failing to deliver to them clippings after the month of April, 1898, pursuant to the contract. * * * Now, I charge you, there is nothing in this contract which gave the defendant that right, to wit, to keep back the second bill of goods, and refuse to deliver any more, because the first had not been paid for. I charge you, there is nothing in the contract which allowed the defendant to break it for that reason. * * * I charge you, I am of opinion that the defendant had no right, under the terms of this contract, to refuse to deliver goods because the former lots were not paid for."

As we have said, the plaintiffs themselves admit that the contract was partly oral; and, upon his cross-examination, one of the plaintiffs makes the following admission, which is in no way withdrawn or modified by his subsequent testimony:

"Q. You were to pay $60 before you took the clippings out of the building? A. Yes, sir." And again: "Q. When you started in to take clippings, under this arrangement, you paid $60 by taking the clippings? A. Yes, sir. By the Court: Q. You don't mean you paid $60 by taking them? A. No, sir; I paid $60 before taking them."

The defendant swears that it was agreed that plaintiffs were to pay every time they took the clippings. The testimony shows that this practice had been followed from the inception of the contract to the 4th of April. Under the charge of the court, the jury had no other resource than to find that defendant had broken the contract by his refusal to allow plaintiffs to take the clippings without paying for them; and that, therefore, plaintiffs were entitled to the return of their deposit. However, as the justice charged them that they might allow defendant credit for the $60 which plaintiffs owed for the clippings taken away on April 4th, the jury brought in a verdict in plaintiffs' favor for $60; having, presumably, deducted the amount owing for the clippings of April 4th from the deposit of $120. We are of opinion that the evidence presented did not warrant the learned trial justice in giving the jury the instructions above set forth. There are many other grounds urged against the judgment, but, as we have decided to reverse on the ground above stated, it is unnecessary to discuss them.

Judgment reversed and new trial ordered, with costs to appellant to abide the event. All concur.